By the Court.

We think the Chancellor gave the proper decree in this case, and the same 'will he affirmed, and the costs divided. We are satisfied this slave, when sold by the Clerk and Master, labored under no mental unsoundness ; but it is conceded, and the proof shows he was at the time, and had been long before, greatly lessened in value by a dangerous rupture, which we are convinced at the time of the petitioner, Boyd’s purchase, not only he, but all the parties, were ignorant of, and that, therefore, the sale is not affected with any fraud: the parties, as to this unsoundness, having acted in good faith, and under the mistaken belief that the slave was sound.
The Chancellor held, that, to tlie extent the rupture lessened the value of the slave, the purchase money should be abated, and referred it to the Master to report the amount. This relief was, directly sanctioned by the case of Pearson vs. Johnson, Administrator, 2 Sneed, 580-4. But, inasmuch as the slave has destroyed himself after Boyd had purchased him and had taken possession, it was not in his power to restore him to the owners; and therefore, the contract could not be rescinded.
As to the other question, at whose risk this slave was, between the sale of the Master and its confirmation by the Court, we are aware of no case invol *391 ving tbe sale of personal estate, in which it has been directly and authoritatively decided, that the casualties which may befall the property, between the sale and confirmation, must be borne by the original owners, and not the purchaser: Butler vs. Conord, Meigs’ Rep., 22-27, is an authority directly to the contrary of this, and shows that this slave, after the Master’s sale, was at the risk of Boyd, the purchaser; and to hold otherwise would, it seems to us, be to give no effect whatever, to the sale, and must lead to great uncertainty and confusion, and operate injuriously upon sales of this character.
If we remember aright, this Court decided the very question at Knoxville, where the slave labored under a total defect; and died between the sale and confirmation.
A delivery has never been considered essential in a sale of personal estate, to put the property at the risk of the purchaser. But, if material here, we are satisfied from the proof, that this slave was delivered to Boyd the purchaser, and received, and held by him as his property, at the time of his seif-destruction; and that nothing had transpired between him and the Clerk and Master to relieve him from the consequences of his purchase.